UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

TOMMY PUCKETT, et al.,
PLAINTIFFS

v.

LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT,
DEFENDANT

CIVIL ACTION NO. 5:12-cv-281

**OPINION AND ORDER**

*** *** *** ***

This matter is before the Court on the Defendant's Motion to Dismiss (DE 3). For the following reasons, the Court will GRANT the motion.

**I. Facts.**

The Plaintiffs, who are one current and two retired police officers of the Lexington-Fayette Urban County Government ("LFUCG"), assert that the LFUCG promised to pay 100% of the single health-insurance premiums of retired police officers and that it has ceased doing that. (DE 1, Complaint ¶¶ 1, 10, 12, 19.) The Plaintiffs argue that the LFUCG has violated their constitutional rights to procedural and substantive due process. The Plaintiffs also assert that the LFUCG has violated their rights under the Contract Clause to the United States Constitution.

**II. Analysis.**

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. The clause has a procedural and a substantive component. Though "[t]he two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power,"

the Sixth Circuit has recognized that the distinctions are "often difficult to discern, and indeed often appear to converge." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996).

Procedural due process does not limit the government's power to "infringe upon a person's life, liberty, or property interest. It simply requires that the government provide 'due process'" before doing so. *Id*. Due process requires that an individual affected by a government decision be given an opportunity to be heard in a "meaningful manner." *Id*. Procedural due process claims are often based on the violation of a right that is created by the state but that does not rise to the level of a constitutional right. *Id*. The right to a hearing prior to the deprivation of the right, however, is a constitutional right no matter the nature of the right violated. *Id*. "The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right lies at the very heart of our constitutional democracy: the prevention of arbitrary use of government power." *Id*.

Substantive due process, on the other hand, "serves as a vehicle to limit various aspects of potentially oppressive government action." *Id*.

> For example, it can serve as a check on legislative enactments thought to infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking," hence oppressive, as to rise to the level of a substantive due process violation.

*Id*.

"While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Charles v. Baesler*, 910 F.2d 1349, 1354 (6th

Cir. 1990) (quoting *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 222-23 (1985) (Powell, J., concurring)).

Whether the claim is procedural or substantive, the court must first determine whether the interest allegedly infringed is a constitutionally protected life, liberty, or property interest. *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x. 429, 436-37 (6th Cir. 2006). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Constitutionally protected property interests are not created by the Constitution itself but rather by "existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

In this case, the Plaintiffs have asserted only one right: the right to have 100% of a single health-insurance premium paid by the LFUCG. (DE 1, Complaint, ¶¶ 1, 10, 12, 30). In their Complaint, the Plaintiffs explicitly state that, "[t]his case arises from the broken promise of LFUCG to pay 100% of the health insurance premiums for its retired police officers." (DE 1, Complaint, ¶ 1.) They further frame the property-interest issue before the Court as "whether retired police officers have a property interest in having their health care insurance premium 100% covered." (DE 1, Complaint, ¶ 30.)

In their Complaint, the Plaintiffs assert that this right arises from a Kentucky statute – KRS 67A.345 – and two local ordinances – Sections 23-36.5 and 23-36.6 of the LFUCG Code of Ordinances. They assert that these provisions "promised that LFUCG

would cover 100% of the health care insurance premium for . . . retired police officers." (DE 1, Complaint ¶ 10.)

KRS 67A.345 provides, in pertinent part:

> The urban-county government shall provide, on behalf of all eligible members of the policemen's and firefighter's retirement fund and city employees pension, the following benefits:
>
> (a) A sum equal to the single premium for the plan coverage selected by the retiree, *but not more than one hundred percent (100%)* of the urban-county government's contribution to the health insurance component of the benefit pool for current urban-county government employees.

KRS 67A.345(2)(a) (emphasis added).

Sections 23-36.5 and 23-36.6 of the LFUCG local ordinances are identical to the statute in all ways that are relevant to this action. Section 23-36.5 applies to officers who retired after July 1, 1999 while Section 23-36.6 applies to those who retired before July 1, 1999. Both provide that the government must contribute "a sum equal to the single premium for the plan coverage selected by the retiree, *but not more than one hundred (100) percent of the contribution*." The term "contribution" is defined as "the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees." LFUCG Code of Ordinances, §§ 23-36.5, 23-36.6 (emphasis added).

Neither the statute nor the local ordinances impose an absolute obligation on the LFUCG to fund 100% of the retirees' health-insurance premium. Instead, they provide that the LFUCG must contribute an amount equal to the single health-insurance premium of retirees as long as that amount is not more than what the LFUCG is contributing for the single health-insurance premiums of current LFUCG employees. In other words, the

LFUCG cannot contribute more for the retirees' health-insurance premiums than it contributes for the premiums of current employees.

For this reason, neither the statute nor the ordinances grant police officer retirees a property interest in the payment of 100% of their health-insurance premiums.

In their response to the LFUCG's motion to dismiss, the Plaintiffs argue that their constitutionally protected property interest in the full payment of a single health-insurance premium arises, not just from the statutes and ordinances, but also from the representations from unspecified LFUCG officials and from the LFUCG's practice of paying 100% of the retirees' health-insurance premiums for more than a decade. They argue that the "representations by local officials and more than a decade of custom and practice considered in combination with the statute and ordinances mean that 100% of police retiree health insurance premiums would be covered." (DE 7, Response at 9.)

In certain instances, representations by city officials and a city's custom and policy can create a property interest. Such an interest can arise from not just a statute but from a policy, practice or "agreements implied from the defendants' words and conduct in light of the surrounding circumstances." *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602 (1972) (internal brackets and quotations omitted)). A property interest can be created by "mutually explicit understandings that support [a] claim of entitlement to the benefit . . . ." *Sindermann*, 408 U.S. at 601.

But it is not enough to simply present evidence of an agreement to confer the benefit. "A constitutional entitlement cannot be created – as if by estoppel – merely because a wholly and expressly discretionary state privilege has been granted generously

in the past." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (citation and internal quotations omitted). "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. Lima*, 296 F.3d 404, 409 (6th Cir. 2002). In order to establish a constitutionally protected property interest in the payment of 100% of their health-insurance premiums, the Plaintiffs "must point to some policy, law, or mutually explicit understanding that both confers the benefits and limits the discretion of the City to rescind the benefit." *Id*. at 410.

While oral representations and past practice can be evidence of a mutual understanding of a binding obligation, the problem in this case is that a statute and two city ordinances directly contradict the alleged understanding. Again, the Plaintiffs assert that they had a mutual understanding with the LFUCG that the LFUCG would fund 100% of the retired police officers' health-insurance premiums forever. The statute and ordinances explicitly provide that any such obligation ends if it requires the LFUCG to pay more for the retirees' health-insurance premiums than it pays for the premiums of current employees. Moreover, the statute and ordinances explicitly prohibit the LFUCG from paying more for the retirees' health-insurance premiums than it pays for the health-insurance premiums of current employees.

"[M]utual understandings and customs [cannot] create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes." *Baden v. Koch*, 638 F.2d 486, 492 (2d Cir. 1980). "While protected property interests in continued employment can arise from the policies and practices of an institution, a property interest contrary to state law cannot arise by informal custom."

*Brett v. Jefferson Cnty.*, 123 F.3d 1429, 1434 (11th Cir. 1997) (citations omitted). *See also Batterton v. Texas Gen. Land Office*, 783 F.2d 1220, 1223-24 (5th Cir. 1986) ("[I]nformal understandings and customs contrary, and subsequent, to the enactment of [a] statute cannot be the source of an employee's property interest. . . . To say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest. . . ."); *Maui Vacation Rental Ass'n, Inc. v. County of Maui*, No. 07-495, 2007 WL 4440962, at * 9, n.12 (D. Haw., Dec. 19, 2007) (granting defendant's motion to dismiss and stating that representations by county employees cannot create a property right where the representations "directly contradicted the law. . . .")

The statute and ordinances explicitly limit the LFUCG's obligation to pay 100% of the health-insurance premiums of retired police officers. The LFUCG cannot pay 100% of the premium for retired officers if it would require it to pay more for retirees than current employees. Accordingly, any representations from LFUCG officials that the LFUCG would always pay 100% of the retirees' health-insurance premium or any past practice of doing so cannot create a property interest.

For their argument, the Plaintiffs rely on *Mayborg v. St. Bernard*, 1:04-CV-00249, 2006 WL 3803393 (S.D. Ohio 2006). In that case, the court determined that the retirees had a property interest in their health-insurance premium and that, when the city ceased paying for the premium, that violated the retirees' right to procedural and substantive due process and their rights under the Contract Clause. *Id*. at *11-14.

There, the court analyzed a city ordinance enacted in 1961 that "promised [the city's] present active [qualifying] employees at the time of their retirement, hospital and

medical insurance coverage similar to that presently furnished by the City to members in active service. . . . " 2006 WL 3803393, at *3. The city argued that the 1961 ordinance only applied to employees who were "present active employees" the year that the ordinance was passed. *Id*. at *2.

It appears that the court determined that the ordinance was ambiguous in that regard and, thus, it considered the past practice and representations of government employees in determining whether the statute applied to all retiring employees beginning in 1961. *See* 2006 WL 3803393, at *8 (quoting *Columbus, H.V. & T Ry Co. v. Pennsylvania Co.*, 143 F. 757, 763 (1906) ("The practical interpretation given to their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indicators of their true intent, and courts that adopt and enforce such a construction are not likely to commit serious error."))

When a statute is ambiguous, the Court can consider extrinsic evidence to determine its meaning. *See In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 988-89 (6th Cir. 2000). Here, however, the statute and ordinances at issue are not ambiguous, at least with regard to whether the city is forever obligated to pay 100% of retirees' health-insurance premiums.

The Plaintiffs argue that the LFUCG has violated the Contract Clause of the United States Constitution, which states that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10, cl. 1. To prove a violation of the Contract Clause, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *Mascio v. Public*

*Emp't Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).

"In deciding whether such a demonstration has been made, the court must ask whether (1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial." *Id*. at 313 (quoting *Linton v. Comm'r of Health & Env't*, 65 F.3d 508, 518 (6th Cir. 1995)). "If a contractual obligation is substantially impaired by the change in law, the court must further inquire whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in the service of a legitimate and important public purpose." *Id*. Because the Court has found that there was no contract between the LFUCG and police officer retirees forever obligating the city to pay 100% of the retirees' health-insurance premiums, the Plaintiffs' claims under the Contract Clause must also be dismissed.

**III. Conclusion.**

For all these reasons, the Court hereby ORDERS as follows:

1) the Defendant's Motion to Dismiss (DE 3) is GRANTED and

2) this action is DISMISSED and STRICKEN from the Court's active docket.

Dated this 12th day of June, 2013.




**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**